James A. Francis
John Soumilas
Lauren KW Brennan
FRANCIS & MAILMAN, P.C.
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
T: (215) 735-8600
F: (215) 980-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PATRICIA MCINTYRE, on behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>REALPAGE, INC., d/b/a On-Site,<br><br>*Defendant*. | Civil Matter No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**TRIAL BY JURY DEMANDED** |

Plaintiff PATRICIA MCINTYRE, on behalf of herself and all others similarly situated, and complaining of Defendant REALPAGE, INC., respectfully alleges as follows:

### I.   PRELIMINARY STATEMENT

1. This is a consumer class action brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA") by Plaintiff seeking relief for Defendant's widespread violations thereof for herself and all others similarly situated.

2. Despite the public availability of court records that conclusively demonstrate that certain eviction cases have been dismissed, withdrawn, vacated, satisfied, or resulted in judgments for tenants, Defendant routinely fails to obtain up-to-date information pertaining to the disposition

of those cases and publishes harmful, misleading, and inaccurate tenant screening reports to landlords in violation of FCRA section 1681e(b).

3. Defendant's practices harm consumers seeking residential leases by prejudicing their prospective landlords with inaccurate, adverse information.

## II. JURISDICTION and VENUE

4. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. §1331.

5. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## III. PARTIES

6. Plaintiff Patricia McIntyre ("Plaintiff" or "Ms. McIntyre") is an adult individual who resides in Philadelphia, Pennsylvania. At all times pertinent hereto, the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

7. Defendant RealPage, Inc. ("Defendant" or "RealPage") regularly conducts business in the Commonwealth of Pennsylvania. Defendant also does business as "On-Site," having acquired certain assets of On-Site Manager, Inc. in September 2017.

8. At all times pertinent hereto, Defendant was a "person" and a "consumer reporting agency" ("CRA") within the meanings of 15 U.S.C. §§ 1681a(b) and (f), respectively.

## IV. FACTUAL ALLEGATIONS

9. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

10.     Defendant is required by the FCRA to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom its reports relate. 15 U.S.C. § 1681e(b).

11.     For many years, Defendant has purchased public records information pertaining to residential eviction litigation ("eviction information") from third-party vendors instead of retrieving the actual underlying court records themselves—or even more manageable digital representations—for the purpose of creating and selling consumer reports to third party landlords and rental property managers.

12.     The eviction information Defendant purchases is merely a summary prepared by its vendors that does not include all the information or the most up-to-date information available at the courthouses or government offices where the records themselves are housed in conjunction with the day-to-day functioning of those entities.

13.     Defendant knows that its public records vendors make mistakes in the condensed, summary eviction information that it purchases for credit reporting purposes and that the information routinely does not include the most up-to-date status of the actual cases.

14.     Purchasing distilled, incomplete public records information was the impetus for regulatory investigations of the "Big Three" CRAs, TransUnion, LLC, Equifax Information Services, LLC, and Experian Information Solutions, Inc., and dozens of FCRA lawsuits throughout the United States, including in this District.

15.     For example, in 2015, the Consumer Financial Protection Bureau ("CFPB") noted that CRAs did not adequately oversee their public records vendors:

> Examiners found that the oversight of public records providers by one or more CRAs was weak and required corrective action. For example, one or more CRAs had never conducted a formal audit of their public records providers. In addition, one or more CRAs did not have defined processes to verify the accuracy of public

record information provided by their public records providers. In light of such weaknesses, Supervision directed one or more CRAs to establish and implement suitable and effective oversight of public records providers.[1]

16. Further, the CFPB expressed concern about the accuracy of public records information that the CRAs imported into their consumer databases:

> Examiners reviewed quality control processes with respect to the accuracy of consumer reports produced by one or more CRAs and found that, with certain exceptions, there were no quality control policies and procedures to test compiled consumer reports for accuracy. While processes existed to analyze and improve the quality of incoming data, there was no post-compilation report review or sampling to test the accuracy of consumer reports. In light of these weaknesses, Supervision directed one or more CRAs to develop a plan with implementation timelines to establish quality controls that regularly assess the accuracy and integrity of the consumer reports and consumer file disclosures produced.[2]

17. Other regulators, including the New York Attorney General, initiated investigations of the Big Three in part due to similar problems with the accuracy and currency of publics records information in credit reports.

18. The Big Three ultimately entered into an agreement[3] with the New York Attorney General that they took to calling the "National Consumer Assistance Plan" ("NCAP").

19. As of July 1, 2017, pursuant to the requirements of the settlement and the NCAP, the Big Three ceased including in credit reports civil judgment information that did not meet

---

[1] CFPB, *Supervisory Highlights*, 2.1.1 (Summer 2015), available at http://files.consumerfinance.gov/f/201506_cfpb_supervisory-highlights.pdf (last viewed July 9, 2018).

[2] *Id*. at 2.1.2.

[3] *Settlement Agreement*, In the Matter of the Investigation by Eric T. Schneiderman, Attorney General of the State of New York, of Experian Information Solutions, Inc.; Equifax Information Services, LLC; and TransUnion, LLC, http://www.ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf (last viewed July 9, 2018).

certain minimum standards. In practice, this meant that civil judgments disappeared entirely from consumer reports prepared by the Big Three.[4]

20. Although the Big Three stepped back from using public records information in some of their consumer reporting products, other CRAs, like Defendant, continue to do so.

21. At all times relevant to these allegations, Defendant was aware of the investigations of the CFPB and state attorneys general into the Big Three's public records practices, the NCAP, the various public records class actions pending throughout the United States, and its obligations under the FCRA.

22. Nevertheless, Defendant, fully aware of the problems associated with the incomplete and inaccurate public records information purchased from vendors of such information, continues to report eviction information to potential landlords.

23. The data and reports Defendant sells are used and expected to be used for multiple purposes governed by FCRA section 1681b and the information included in them bears on the credit history, credit worthiness, reputation, personal characteristics, and mode of living of each respective consumer. Thus, the reports that Defendant sells about thousands of consumers each year are "consumer reports." *See* 15 U.S.C. § 1681a(d).

24. Based upon a common policy and practice, Defendant regularly reports inaccurate and out-of-date eviction information pertaining to cases and judgments that have been dismissed, withdrawn, satisfied, or have resulted in a judgment for the tenant.

25. Defendant's practices not only violate the FCRA as a matter of law, they exact serious consequences on rental housing applicants and interstate commerce. Consumers who have

---

[4] *See* CFPB, *Quarterly Consumer Credit Trends Report*, 2-3 (February 2018) https://www.consumerfinance.gov/documents/6270/cfpb_consumer-credit-trends_public-records_022018.pdf (last viewed July 9, 2018).

obtained the dismissal, withdrawal of an eviction matter, satisfied an eviction judgment, or prevailed in an eviction matter are prejudiced in their ability to obtain leased housing.

*Plaintiff's Experience*

26. At all times relevant to Plaintiff's allegations, information pertaining to Landlord Tenant Complaints filed in the Philadelphia Municipal Court, including full case dockets and digital representations of all documents filed in such cases, including, but not limited to complaints, judgments, vacaturs, withdrawals, and satisfactions of judgment, were publicly available online for free from the Philadelphia Municipal Court Electronic Filing System.

27. On or about October 26, 2017, Plaintiff applied to rent an apartment at The Metropolitan Manayunk Hill, an apartment building in Philadelphia, Pennsylvania.

28. In conjunction with her application, Defendant prepared a "Rental Report" about Plaintiff for a fee under the trade name "On-Site."

29. Upon information and belief, The Metropolitan passed Defendant's fee along to Plaintiff as an "application fee."

30. The Rental Report contained credit information about Plaintiff that Defendant had acquired from TransUnion, one of the Big Three national credit reporting agencies.

31. The Rental Report included a header labeled "Landlord Tenant Court Records." However, upon information and belief, Defendant did not conduct any independent search of relevant civil records, but rather purchased the data it included in the Rental Report from a third-party vendor.

32. Upon information and belief, Defendant purchased the eviction information from TransUnion after TransUnion itself had stopped including public records information in its own credit reports. *See* ¶¶ 14-19, *supra*.

33. The Rental Report included four inaccurate and out-of-date items of eviction information purportedly pertaining to Plaintiff.

34. The first inaccurate and out-of-date item appeared, in relevant part, as follows:

| Date Filed 12/2016 | **Case Type** **CIVIL ACTION FOR POSSESSION** | **Court** PHILADELPHIA | **Case Number** 1612063568 | **Notice Type** |
|---|---|---|---|---|
| | **Judgment** | **Judgment Amount** | **Status** | **Amount Paid** |
| | **Defendants** PATRICIA MCINTYRE | | | |
| | **Address** 3701 CONSHOHOCKEN AV. 31 921 PHILADELPHIA, PA 19131 | | **Comments** | |
| | **Plaintiff** DUFFIELD HOUSE ASSOC | | **Plaintiff Phone #** | |

35. This information was inaccurate and out-of-date because the complaint filed against Plaintiff in case LT-16-12-06-3568 on December 6, 2016 was reduced to judgment on February 15, 2017, but that judgment was *vacated* on May 18, 2017 and the case itself was withdrawn on July 28, 2017. Documents reflecting these updates were filed on the publicly-available case docket contemporaneously with their entry.

36. Nevertheless, the Rental Report contained no reference to the vacatur of the judgment or the withdrawal of the case.

37. As of the date of the Rental Report, October 26, 2017, Defendant had failed to update the status of the December 6, 2016 filing for nearly six months.

38. The second inaccurate and out-of-date entry appeared, in relevant part, as follows:

| Date Filed 11/2012 | Case Type CIVIL ACTION FOR POSSESSION | Court PHILADELPHIA | Case Number 1210053884 | Notice Type |
|---|---|---|---|---|
| | Judgment FOR PLAINTIFF 11/6/2012 | Judgment Amount | Status | Amount Paid |
| | Defendants PATRICIA MCINTYRE | | | |
| | Address 3902 CITY AVE. B1223, PHILADELPHIA, PA 19131 | | Comments | |
| | Plaintiff BLDG PHILADELPHIA LP | | Plaintiff Phone # | |

39. This information was inaccurate and out-of-date because Plaintiff *satisfied* the judgment entered against her on November 6, 2012 in case LT-12-10-05-3884 on May 14, 2015, when an entry reflecting that updated disposition was filed on the publicly-available case docket.

40. The Rental Report contained no reference to the satisfaction.

41. As of the date of the Rental Report, October 26, 2017, Defendant had failed to update the status of the November 6, 2012 judgment for nearly two and a half years.

42. The third inaccurate and out-of-date entry appeared, in relevant part, as follows:

| Date Filed 10/2012 | Case Type CIVIL ACTION FOR POSSESSION | Court PHILADELPHIA | Case Number 1210053884 | Notice Type |
|---|---|---|---|---|
| | Judgment | Judgment Amount | Status | Amount Paid |
| | Defendants PATRICIA MCINTYRE | | | |
| | Address 3902 CITY AVE. B1223, PHILADELPHIA, PA 19131 | | Comments | |
| | Plaintiff BLDG PHILADELPHIA LP | | Plaintiff Phone # | |

43. This information was inaccurate and out-of-date because the complaint filed against Plaintiff in case LT-12-10-05-3884 on October 5, 2012 was reduced to judgment on November 6,

8

2012, which judgment Plaintiff *satisfied* on May 14, 2015, when an entry reflecting that updated disposition was filed on the publicly-available case docket.

44. The Rental Report contained no reference to the satisfaction.

45. As of the date of the Rental Report, October 26, 2017, Defendant had failed to update the status of the November 6, 2012 judgment for nearly two and a half years.

46. The fourth inaccurate and out-of-date entry appeared, in relevant part, as follows:

| Date Filed 1/2012 | Case Type CIVIL ACTION FOR POSSESSION | Court PHILADELPHIA | Case Number 1201185230 | Notice Type |
|---|---|---|---|---|
| | Judgment | Judgment Amount | Status | Amount Paid |
| | **Defendants** PATRICIA MCINTYRE | | | |
| | **Address** 3902 CITY AVE. B1223, PHILADELPHIA, PA 19131 | | **Comments** | |
| | **Plaintiff** BLDG PHILADELPHIA LP | | **Plaintiff Phone #** | |

47. This information was inaccurate and out-of-date because the complaint filed against Plaintiff on January 18, 2012 in case LT-12-01-18-5230 was *withdrawn* on February 17, 2012, when an entry reflecting that updated disposition was filed on the publicly-available case docket.

48. The Rental Report contained no reference to the withdrawal.

49. As of the date of the report, October 26, 2017, Defendant had failed to update the status of case LT-12-01-18-5230 for nearly six years.

50. Forced to vacate her previous apartment because of mold and unable to secure rental housing because of Defendant's inaccurate and out-of-date tenant screening report, Plaintiff has been forced to live in expensive extended-stay housing for many months.

51. At all times pertinent hereto, Defendant's conduct was a result of its deliberate policies and practices, was willful, and carried out in reckless disregard for consumers' rights as

set forth under sections 1681e(b) and 1681g(a) of the FCRA, and further assumed an unjustifiably high risk of harm.

## V.     CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action on behalf of the following Classes for Defendant's violations of FCRA section 1681e(b):

### *Failure to Update Class – Nationwide*

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories who were subjects of tenant screening reports created by Defendant that contained eviction information, but which failed to state that the action had been withdrawn, dismissed, non-suited, or resulted in a judgment for the tenant defendant according to court records dated at least 30 days prior to the date of the report.

### *Failure to Update Subclass I: Commonwealth of Pennsylvania*

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories who were subjects of tenant screening reports created by Defendant that contained information pertaining to a landlord tenant action filed within the Commonwealth of Pennsylvania, but which failed to state that the action had been withdrawn, dismissed, non-suited, or resulted in a judgment for the tenant defendant according to court records dated at least 30 days prior to the date of the report.

### *Failure to Update Subclass II: Philadelphia*

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories who were subjects of tenant screening reports created by Defendant that contained information pertaining to a landlord tenant action filed in the Philadelphia, Pennsylvania Municipal Court but which failed to state that the action had been withdrawn, dismissed, non-suited, or resulted in a judgment for the tenant defendant according to court records dated at least 30 days prior to the date of the report.

53.     The members of the Classes are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendant, Plaintiff avers upon information and belief that the members of the Classes number in the

thousands. Defendant sells eviction information to thousands of landlords and rental property agents throughout the country, and its reports to such businesses are standardized, form documents, produced by the same practices and procedures applicable to all subjects of the reports. Furthermore, upon information and belief, Defendant prepares and sends disclosures to consumers using standardized policies and procedures.

54. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. The principal question is whether Defendant violated the FCRA by failing to follow reasonable procedures to assure the maximum possible accuracy of the information contained in consumers' reports with respect to eviction cases that had been withdrawn, dismissed, non-suited, or resulted in a judgment for the tenant defendant at least 30 days prior; whether Defendant violated the FCRA by failing to provide all of the information it maintains about consumers upon request; and whether Defendant violated the FCRA by failing to disclose the source(s) of eviction information.

55. Plaintiff's claims are typical of the claims of the members of the Classes, which all arise from the same operative facts and are based on the same legal theories.

56. Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff is committed to vigorously litigating this matter and has retained counsel experienced in handling consumer class actions. Neither Plaintiff nor her counsel has any interests which might cause them not to vigorously pursue this claim.

57. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with

respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

58.	Whether Defendant violated the FCRA can be determined by examination of Defendant's policies and conduct and a ministerial inspection of Defendant's business records and publicly available eviction litigation records.

59.	A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is slight because the maximum statutory damages are limited to between $100.00 and $1,000.00 under the FCRA. Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the members of the Classes may be derived from Defendant's records.

## VI.    CLAIMS *for* RELIEF

### COUNT I – VIOLATION *of* FCRA SECTION 1681e(b)

60.	Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

61.	Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable to the Plaintiff and the Failure to Update Classes for negligently and willfully failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom a consumer report relates, in violation of section 1681e(b). Specifically, Defendant failed to follow reasonable procedures to assure maximum accuracy of eviction information contained in tenant screening reports prepared about Plaintiff and members of the Failure to

Update Classes, thereby publishing inaccurate and outdated eviction information to their potential landlords and property managers.

### VII.    PRAYER *for* RELIEF

WHEREFORE, Plaintiff prays this Honorable Court enter an order granting the following relief:

      A.    certifying the proposed Classes under Federal Rule of Procedure 23 and appointing Plaintiff and her counsel to represent the Classes;

      B.    declaring that Defendant's actions as described above are in violation of the FCRA;

      C.    awarding actual damages pursuant to 15 U.S.C. § 1681o(a);

      D.    awarding statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member pursuant to 15 U.S.C. § 1681n(a);

      E.    awarding punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

      F.    awarding costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o;

      G.    and granting such other and further relief as may be just and proper.

## VIII. JURY TRIAL DEMAND

62. Plaintiff demands trial by jury on all issues so triable.

Dated: September 12, 2018

Respectfully submitted,

PATRICIA MCINTYRE, *on behalf of herself and all others similarly situated.*

By: */s/John Soumilas*
James A. Francis
John Soumilas
Lauren KW Brennan
FRANCIS & MAILMAN, P.C.
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

*Attorneys for Plaintiff*