# Exhibit C

```
             UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF NEW YORK



----------------------------X
                            :
SEMONE HARVEY,              :
                            :    18-CV-3946 (ARR)(VMS)
              Plaintiff,    :
                            :    July 9, 2019
                            :
         V.                 :    Brooklyn, New York
                            :
CBCINNOVIS, INC.,           :
                            :
              Defendant.    :
----------------------------X


     TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
         BEFORE THE HONORABLE VERA M. SCANLON
            UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          JOHN SOUMALIS, ESQ.
                            KEVIN MALLON, ESQ.



For the Defendant:          BRIAN PETE, ESQ.


Audio Operator:


Court Transcriber:          ARIA SERVICES, INC.
                            c/o Elizabeth Barron
                            102 Sparrow Ridge Road
                            Carmel, NY 10512
                            (845) 260-1377



Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

1          THE COURT:  This case is Harvey v.

2     CBCInnovis, Inc., 18-CV-3946.

3          For the plaintiff?

4          MR. SOUMALIS:  Your Honor, good afternoon.

5     John Soumalis for the plaintiff Ms. Harvey, and my

6     colleague, Kevin Mallon, is here with me today.

7          THE COURT:  For defendant?

8          MR. PETE:  Good afternoon, your Honor.

9     Brian Pete, Lewis Brisbois Bisgaard & Smith.

10          THE COURT:  Are you part of this?  Do you

11     want to sit with him?

12          UNIDENTIFIED SPEAKER:  No, that's not

13     necessary, your Honor.

14          THE COURT:  Have you made any progress on

15     your discovery dispute?

16          MR. SOUMALIS:  Your Honor, no progress since

17     our letter of June 7th.  We are just stuck on that issue

18     and need some assistance from the Court.

19          MR. PETE:  Your Honor, if I could, just to

20     start, if it's all right with your Honor.  In your

21     Honor's order setting the conference, you asked defense

22     counsel to state whether they intended to move pursuant

23     to Rule 12(c).  I think in looking at the issues, it's

24     really germane to this dispute, one, whether or not

25     there is a proper class going beyond two years in

1  between the two to five-year FCRA period, as well as

2  whether Ms. Harvey is an adequate representative to

3  class members from before.  CBCInnovus obtained records

4  directly from Lexus/Nexus.  We do intend to move, it

5  would be either pursuant to Rule 12, Rule 23, what have

6  you, the motion to strike the class allegations, class

7  definitions as to the five-year class.

8           I think in that motion, we will flesh out

9  the arguments that were teed up in the joint status

10 letter.  We can make that motion relatively promptly so

11 as not to unduly delay anything within fourteen days.

12 I believe that that motion will allow your Honor to

13 either resolve or moot some of the discovery issues to

14 clear a path going forward.

15          THE COURT:  Okay.  Just so I understand, on

16 defendant's side, why are you offering as it's almost

17 like a sampling, the people who have disputed the

18 record?  You can all stay seated, that's fine.

19          MR. PETE:  Sure.  We produced the records of

20 consumer individuals who disputed civil judgment

21 information for reasons which were the same as Ms.

22 Harvey's.  This was done through a meet and confer with

23 plaintiff's counsel.  Of course, plaintiff's counsel

24 didn't waive their right to seek any further discovery.

25 We did that for the period identified in our discovery

1   responses, which was July 28, 2017 to August, 2018.

2   That's the period in which CBCInnovis obtained civil

3   judgment records from Lexus/Nexus, which is really the

4   gravamen of plaintiff's complaint, which is that

5   beginning in July, 2017, the big three credit agencies

6   stopped collecting civil judgment information.  CBC

7   then (ui) to Lexus.

8           So we produced records which we felt were

9   one of which she is an adequate representative because

10  prior to us using Lexus, it's an entirely different

11  fact pattern.  Her complaint alleges that we should

12  have not used Lexus because of what happened in the big

13  three, we should have contacted Lexus for updated

14  records.  So in our view, her arguments as to what is

15  an adequate or necessary standard under the FCRA is

16  going to be different than individuals going back from

17  the pre-Lexus period.

18          Second to that is the statute of limitations

19  issue.  In the FCRA, it's the earlier of two years from

20  the date of discovery or five years from the date of

21  the violation.  So going beyond two years in our view,

22  and there are courts that have held the same, it's an

23  individualized inquiry for everyone beyond two years as

24  to when they discovered their violation.  Essentially,

25  each class member would have to be separately litigated

1    as to whether or not their claim is barred by a statute

2    of limitations.  So we produced records pertaining to

3    what we felt was the relevant time period.

4                THE COURT:  Okay, so why the disputers?

5    That's what I meant?

6                MR. PETE:  We proposed producing the

7    disputers because, one, we had seen that method taken

8    -- that course taken in other cases.  Two, we felt that

9    in terms of producing -- minimizing the burden on our

10   client and kind of getting right to what data could be

11   most relevant, in our view, consumers who dispute it

12   are perhaps more likely to have an incorrect judgment

13   record.

14                So we started with that as a position and I

15   think what's happened is, as we've communicated to

16   counsel throughout this case, there's just not a lot of

17   disputes.  We only had about I think thirteen disputes

18   for the same reason as Ms. Harvey, going back to the

19   period in which Lexus was used, which is very small.

20   This is something that we touched -- I touched upon I

21   believe in the initial conference, that in our view,

22   there's arguably not even numerosity here.

23                THE COURT:  That's what I was trying to

24   understand.  We were looking at the transcript in the

25   Delarosa (ph), case, which is Delarosa v. Experian

1    <u>Information Solutions</u>.  It was a little bit flipped.

2    It was the defendant who -- anyway, whatever.  The

3    particulars -- this is your case so --

4              MR. PETE:  I'm familiar with that case as

5    well.

6              THE COURT:  Okay.

7              MR. PETE:  And actually, that discovery

8    conference.

9              THE COURT:  It seems like in that case,

10   plaintiff at least was trying to get to forty.  So if

11   you only have thirteen -- put aside whatever plaintiff

12   wants this class to be, even the narrow -- whatever the

13   narrow class is, they would hope that there's at least

14   forty members.  But if you're saying you've gotten to

15   thirteen --

16             MR. PETE:  Yeah, thirteen consumers who

17   disputed because of a civil judgment record.  In

18   Delarosa -- the other thing to keep in mind is CBC is a

19   reseller.  Delarosa was against one of the big three,

20   so they were starting from a much bigger pool to begin

21   with.

22             THE COURT:  Right.

23             MR. PETE:  This is, as the complaint

24   indicates, kind of a new product.  So it's being

25   presumed that there's a certain high error rate but

1    there's no basis for that.  The reason we only have

2    thirteen I think is indicative of the fact that, out of

3    the tens of thousands (ui), that only thirteen are

4    being disputed I think is a good indicator of whether

5    or not there's an actual problem here.  I think that

6    that small number, which we've shared and which we've

7    kind of intimated throughout this entire case, is now

8    leading towards expanding the scope of the discovery in

9    the five years because now the period which we feel is

10   actually relevant is too small, for plaintiff that is,

11   not defendant.

12            THE COURT:  Okay.  One other thing:  The

13   complaint is primarily or is about Lexus/Nexus, even

14   if, plaintiff, you're trying now to have some broader

15   definition.  Were there other vendors whose judgment-

16   related information you included on plaintiff's report,

17   I guess we'll call it?

18            MR. PETE:  As far as I'm aware, the other

19   information would have come from the big three

20   reporting agencies.  The civil judgment information did

21   come from Lexus/Nexus.

22            THE COURT:  And that was the only source of

23   it, Lexus/Nexus.

24            MR. PETE:  Of the civil judgment

25   information.

1          THE COURT:  Okay.

2          MR. PETE:  The complaint is correct that in

3     July, 2017, Experian, Equifax, and Transunion stopped

4     reporting it, but that didn't actually bar it from

5     being reported.  I believe it was through a settlement

6     and a consent order, so Lexus became the source, direct

7     source for CBC for civil judgment information.

8          THE COURT:  So on your side, what would be

9     -- if you stick with your version of what you think the

10    class should be, which I think -- as I understand it,

11    the limited time period for those individuals for whom

12    information was drawn from Lexus/Nexus, right?

13         MR. PETE:  Yeah, I think the --

14         THE COURT:  But thirteen doesn't get them to

15    forty, which is where --

16         MR. PETE:  I mean, I --

17         THE COURT:  -- which is where they want to

18    be.  Obviously, your --

19         MR. PETE:  I know.  I'd love to get them to

20    forty.  I may not be able to.  The number is what it

21    is.

22         THE COURT:  What number is what it is

23    because you've provided those who disputed, right?

24         MR. PETE:  Yes.

25         THE COURT:  On the thought that if they took

1  the people who disputed and went back to the OCA

2  records or whatever, the state records, that might help

3  them identify individuals who had either their judgment

4  satisfied or vacated or something happened such that it

5  shouldn't have been reported as an open judgment,

6  right?

7          MR. PETE:  Yes.

8          THE COURT:  But that hasn't led -- given

9  that only have thirteen, that's not going to get to

10 forty -- the underlying idea that the people who

11 complained might be the people who actually had

12 problems, you're obviously suggesting indirectly, and

13 those who didn't complain didn't have problems, which

14 may or may not be correct, but anyway.  How do we get

15 to --

16          MR. PETE:  It sounds as if your Honor may be

17 proposing a compromise that we haven't discussed.

18          THE COURT:  I'm asking you what you're

19 suggesting because we haven't talked about -- one of

20 the things I wanted to know from the parties, but it's

21 particularly you, is what are the logistics of this

22 production because on the plaintiff's side -- I'm going

23 to talk to the plaintiff in a few minutes -- the

24 numbers that -- if you were to work off of, and I'm not

25 suggesting we're going to, but this footnote 1 that

1   there are 768,000 New York judgments that were fully

2   satisfied or vacated in the 2013 to March, 2019 period.

3   I have no idea what the scale of your business is.  You

4   didn't touch on all those people but there's a vast

5   number of possible -- people about whom reports could

6   have been issued that might have had this issue, right?

7           MR. PETE:  Yes, and I think part of --

8           THE COURT:  But I don't know what your data

9   looks like.

10          MR. PETE:  CBC's data -- CBC is a reseller

11  so they don't -- they only -- when a client contacts

12  them, they contact either the big three or a vendor and

13  they create a report and the report -- they merge that

14  (ui).

15          THE COURT:  I'm sorry, they merge the Lexus

16  information to that, too?

17          MR. PETE:  Yeah, they take the Lexus

18  information and then send a report.  So their data is

19  really -- they don't maintain necessarily these

20  physical reports.  It's essentially a data image, which

21  then has to be -- the individual data points have to be

22  basically re-imaged and then re- kind of put together.

23  And then going back I think beyond two to three years

24  is an issue of archiving certain data before the case

25  was filed.  The data is still available.  But given the

1    number of potential reports with judgments, which could

2    be in the six figures, that CBC has dealt with, we're

3    looking at a significantly burdensome task to go all

4    the way back to five years.

5              THE COURT:  What does it look like if you're

6    looking at the same period that you talked about, the

7    July -- do I have the wrong one?  Sorry.  Yeah, the

8    July, 2017 to August, 2018, right?

9              MR. PETE:  Yeah.

10             THE COURT:  That's the shutting down of the

11   big three reporting this information and you getting it

12   from Lexus.  So if you take the period for which you

13   reported out Lexus-derived, New York, judgment-related

14   information and pushed that out, is there a way for you

15   to -- your client to know what number of people that

16   is?

17             MR. PETE:  Yeah, there's a way for them to

18   know what number of people have --

19             THE COURT:  And what's involved -- well,

20   then to access that.  What's involved in the technical

21   side because this analysis ultimately, putting aside

22   the legal question, is a question of proportionality.

23             MR. PETE:  Yeah.

24             THE COURT:  To use that example, if your

25   client hits one button or puts in a couple of data

1  points and can push it all out, that's no big deal.

2          MR. PETE:  I mean, it's not a matter --

3          THE COURT:  So what is it?

4          MR. PETE:  It's not a matter of that.  I

5  mean, it took them a decent amount of time to put

6  together just the list of the thirteen we had,

7  including multiple departments within the company,

8  their IT department, their data storage coordinator, et

9  cetera.  So it can be done of course for --

10          THE COURT:  Both those are the people who --

11  are you looking at the same data set because records

12  you pushed out isn't the same as the people who called

13  in and said, wait a minute, this is wrong, or whatever

14  they did, emailed you, called you, whatever they did.

15          MR. PETE:  Those individuals all had civil

16  judgment information on a report that they disputed.

17          THE COURT:  But was the hard part finding

18  the disputers or finding the disputers' records?

19          MR. PETE:  I think the difficulty in this is

20  doing all the necessary filtering.  Filtering by

21  disputes I think helps the process because it's

22  basically a data category that you can use to narrow,

23  which I think is why, in the Delarosa case, it was the

24  flip side, which is why they wanted it -- because

25  Experian or whoever was just going to dump hundreds of

1  thousands of records.

2          THE COURT:  Do a dump, right.

3          MR. PETE:  I felt that -- we proposed just

4  meeting in the middle saying, we'll run this and we'll

5  do what Experian didn't want to do, which is we'll go

6  ahead and we'll do another step, filter the disputes

7  and see what we get.

8          THE COURT:  Is your client capable and what

9  would it cost and how much time would it take for them

10 to do a production that was -- we're going to now say

11 put aside some privacy concerns.  I don't know if there

12 should be redactions or not but for your client to make

13 a production that was all of the reports to your

14 clients, or to their clients rather, from July, 2017 to

15 August, 2018 that included New York judgment-related

16 information from Lexus/Nexus, not only those that

17 disputed it.

18         MR. PETE:  I just want to be -- just so I

19 understand your Honor correctly.  What we produced was

20 a spreadsheet of identifying information of a consumer

21 i.d., the judgment amount, the index number, the date

22 of the inquiry, and I believe the date the report was

23 issued, the reason being is counsel's plan, as I

24 indicated in the initial conference, was to match that

25 up --

1          THE COURT:  Right.

2          MR. PETE:  -- with what's in the public

3     data.

4          THE COURT:  Right.

5          MR. PETE:  So in our initial production, we

6     did not recreate and re-image the reports.  We of

7     course produced Ms. Harvey's report.  So I just want to

8     make sure -- is your Honor asking if -- proposing to

9     expand the production we already made in terms of the

10    data?

11         THE COURT:  Yeah, look, you only got

12    thirteen, they're looking for forty.  We've got to find

13    -- they have to know whether, at least in the smallest

14    class here, which whatever -- we'll talk about the

15    parameters.

16         MR. PETE:  There are more than forty --

17    there are more than forty consumers with civil

18    judgments on their reports.

19         THE COURT:  Yeah, but there's -- presumably,

20    hopefully, there's a very significant number of them

21    for whom the information is correct.  They didn't

22    satisfy -- they didn't pay their judgments, the

23    judgments weren't vacated.  The fact that Lexus didn't

24    update it within thirty days is probably capture -- I

25    don't know when they updated it but it's probably going

1  to capture a small slice of whatever.  There are

2  roughly a hundred or so thousand judgments that

3  something changes in a year.  That's totally based on

4  this footnote.

5           MR. PETE:  So I mean, in terms of the time

6  and cost to -- correct me if I misunderstood it -- to

7  essentially report civil judgment information for all

8  New York judgments on consumer reports from that June

9  28th to August, 2018 period, regardless of a dispute.

10 Is that correct?

11          THE COURT:  For which you drew the

12 information from Lexus.

13          MR. PETE:  From which the information was

14 drawn from Lexus.

15          THE COURT:  And I'm using report but I don't

16 think --

17          MR. PETE:  Yes.

18          THE COURT:  I'm not taking into account

19 whatever this re-imagine is.  So if there's something -

20 - if you have a spreadsheet that when you said it's

21 your clients is dumped into some nice form, I'm not

22 talking about that.  I'm talking about getting it in a

23 way where the data is identified by field or in a

24 report version, it depends.  You have to tell me how

25 your client keeps the information.

1           MR. PETE:  I think what you're asking

2    essentially -- the version of what we produced, just

3    not filtered by disputes.

4           THE COURT:  Yeah, but you have to tell me

5    what that looks like.  I don't know the size of your

6    client's business, how often they produce anything.

7           MR. PETE:  I believe that, in terms of New

8    York civil judgments on consumer records during the

9    Lexus period, we could potentially be looking at tens

10   of thousands, perhaps a hundred thousand.  In terms of

11   the cost and time that it would take to get that, I

12   would say it's likely significant.  I have not fully

13   discussed with them because that type of proposal or

14   word-around is not something that we discussed.

15          THE COURT:  Well, do you have a sense of

16   what -- if plaintiff got what plaintiff seems to want,

17   we can produce it by?

18          MR. PETE:  I don't want to speak for

19   plaintiff.  As I understand what --

20          THE COURT:  This is your end.  They want a

21   lot so, at a minimum, you should know what it would

22   cost you to produce a lot, what they want, several

23   years --

24          MR. PETE:  What they want is going back five

25   years.

1          THE COURT:  Right.

2          MR. PETE:  Which would be significant.

3          THE COURT:  Look, you're trying to make your

4    proportionality defense.  This is not proportionate to

5    the damages suffered here, in part because you have

6    thirteen people who disputed it and you're trying to

7    infer that oh, well, if only thirteen people disputed

8    it, that suggests that there's not a significant error

9    rate here.  I have no idea if that inference is correct

10   or not but without knowing what it's going to cost your

11   client versus what the yield of helpful information is

12   going to be, it's hard to make an assessment.  So how

13   much, how many hours, what does this look like, what

14   are the concerns?  That's what the issue is.

15         MR. PETE:  We're talking about what's being

16   requested, which was the full --

17         THE COURT:  The sun, the moon, and the stars

18   is what they want.

19         MR. PETE:  Yes.  I think that there's a

20   conversation we haven't had, which is them requesting

21   the same data set, just not customers who disputed it.

22   I mean, that's not their request that we're here for.

23   We're here for a request for everything going back five

24   years.

25         THE COURT:  Right.

1          MR. PETE:  Which is significant man hours

2     involving multiple individuals, and likely a couple of

3     months' worth of work.

4          THE COURT:  What's it going to cost, what's

5     the time period?

6          MR. PETE:  So the two -- in terms of -- the

7     proposal that your Honor is suggesting I don't even

8     know if it's amenable to them as a compromise.  It

9     hasn't been raised and we haven't had a chance to

10    discuss it because what your Honor is suggesting is

11    much narrower than what they're seeking.  Your Honor is

12    suggesting that the period be limited to essentially

13    the Lexus period, as opposed to going back an

14    additional three and a half years.

15         THE COURT:  Let's take it the other way.

16    I'm not suggesting, I'm trying to inquire as to the

17    parameters that are involved here in terms of time,

18    money, effort, distraction from your primary business,

19    your client's business goals, et cetera, all the things

20    that one should take into account in terms of a

21    proportionality analysis on the producer side, and the

22    need on the receiving party's end for how important the

23    information is.  So if your client had to produce

24    everything the plaintiff is asking for, which is the

25    long period of time, not limited by vendor, if there

1    was anybody else from whom you were receiving judgment

2    information and pushing it out, not those who

3    challenged, et cetera, what is it going to cost your

4    client in terms of time, money, effort, whatever else

5    you think --

6              MR. PETE:  Time, money, effort?

7              THE COURT:  Whatever you think is relevant

8    here.

9              MR. PETE:  With respect to going back to the

10   five years, I mean, I think we're likely talking about

11   a couple weeks' worth of work on the part of multiple

12   people because there are various departments that have

13   to be involved here.  There's data storage, there's the

14   individual responsible for data collection, and then

15   the individuals responsible for then also compiling

16   that data into some type of format in which it can then

17   be produced to the plaintiff.

18             THE COURT:  And you have any idea if it's in

19   a useful form right now.

20             MR. PETE:  It's not in a useful form right

21   now.  This would have to be created.  Some useful form

22   would have to be constructed from records stored with

23   the client going back five years.

24             THE COURT:  Do you have any information

25   about how it's stored?  Is it stored in a spreadsheet,

1   is it stored only as a PDF or some other equivalent

2   image?  What do they have?

3          MR. PETE:  I believe they're stored at the -

4   - as I understand it, they are stored as various

5   individual image files, and going back beyond two

6   years, certain data is no longer maintained in the

7   image, it is maintained in kind of separate little

8   repositories based on the source it was received.  So

9   basically, these records are not something that can

10  just be readily produced.

11         To circle back to -- the initial point was

12  that if we're talking about going back five years, in

13  our view, that type of undertaking is not necessary

14  because we submit that there's no reason -- they're not

15  going to be able to get a class for that period, which

16  is why we would intend to move to strike the class

17  definition of five years, which would moot this issue.

18  If your Honor were to grant that motion, this issue

19  would be moot.

20         THE COURT:  It wouldn't be my motion.  The

21  problem is, not having done it, despite our

22  conversation before, now I'm trying to anticipate

23  possible legal outcomes on the class/pleading/maybe

24  even summary judgment, without actually having even the

25  opportunity to see those motions, let alone know what

1   Judge Ross thinks about them.

2            MR. PETE:  I'm not asking your Honor to rule

3   on these issues.

4            THE COURT:  Yes, but you are asking me to

5   adapt the discovery schedule to -- or the scope of

6   discovery at this time anyway to the possible outcome

7   from one of those motions.  Do you have any other

8   information about the effort that your client would

9   have to undertake in order to produce some version of

10  this data, whether it be time limited either by the one

11  year I think that you're including, or a three-year

12  period or a five-year period, the technical

13  limitations.  I think you mentioned after two years,

14  then you'd have to do something different.

15           MR. PETE:  I mean, I would think --

16           THE COURT:  Any information?

17           MR. PETE:  -- if we're narrowing the scope

18  of what they're looking for to say the Lexus period or

19  even two years, that's obviously going to be less of a

20  burden than the entire five years.  In terms of the

21  specifics on the cost and time with those periods, that

22  information I don't have because that wasn't really

23  something that was proposed.  I'm happy to get that

24  information but that type of limitation was not

25  proposed when we reached this impasse.  Then it went

1    immediately to, let's go to the entire five years, and

2    that is a huge undertaking.  Obviously, there's less of

3    an undertaking and it's less burdensome if we stick to

4    what's alleged in the complaint here, which is based

5    upon records obtained from Lexus/Nexus.

6           THE COURT:  What about a different question,

7    which is, in your production with regard to dispute,

8    you provided six pieces of information, two of which

9    really relate to the dispute.  So the four that would

10   cut across more than just the disputers would be a

11   consumer identifier, the court, the case number, and

12   the amount of the judgment versus the plaintiff's

13   suggestion is that she should have lots of information

14   and there's ten categories proposed, only one of which

15   is the dispute.

16           So do you have any idea of the way your

17   client keeps the information, if that's just one

18   record.  Going back to Delarosa, it might be easier

19   just to do a data dump versus culling out certain

20   fields that plaintiff doesn't need or it might be

21   helpful as a backup but it's not immediately obvious

22   that it's necessary.  Any idea how this information

23   is --

24           MR. PETE:  Starting with the first one, I

25   believe, which are the judgment debtor's name, their

1    address, basically their contact information.  That's

2    obviously information that CBC has, and our position is

3    that that's not necessary to be produced at all for two

4    reasons:  One, it's generally accepted that pre-

5    certification, putative class members' contact

6    information is not discoverable unless there's some

7    bearing on the factual allegations.  Here, none of the

8    prospective class are potentially fact witnesses.

9            Second, there are significant privacy

10   concerns CBC has for its consumers.  What we produced

11   was data sufficient to allow counsel to retrieve the

12   records at the county clerk's office or what have you

13   and match them up with what we're reporting, namely the

14   index number, amount of the judgment.  That's what

15   they're looking for.  That is kind of the endeavor they

16   suggested at the initial conference that they're

17   undertaking.  We provided information sufficient for

18   them to do that.

19           Names and addresses, to the extent that's

20   reflected in the public records that they're going to

21   pull, then they will have that information.  I don't

22   know if any of these judgments have -- are for whatever

23   reason initialed or the names have ben redacted or

24   sealed.  I have no idea.  They're going to be searching

25   public records based on the index number and the amount

1  of the judgment, which will enable them to locate the

2  actual judgment to the extent it can be located,

3  depending on the Court.  So that extra information

4  they're seeking is going to be on the public record to

5  the extent it's public.

6          THE COURT:  That doesn't answer my question,

7  which is, do you have any idea how your client's

8  records are kept such that it would affect the effort

9  to collect, produce, deliver to the plaintiffs in a

10 usable form these different categories of data?

11         MR. PETE:  The case number was provided, the

12 amount -- so in terms of the categories of data that

13 were not provided, judgment debtor's address, judgment

14 debtor's name --

15         THE COURT:  Status of the judgment.

16         MR. PETE:  Status of the judgment due and

17 owing would really only be whatever was -- they don't

18 have the present status due and owing.  They only have

19 whatever status was reported on a consumer report at

20 the time the inquiry was made.  The status of the

21 judgment is the current status of the judgment we would

22 find in the public record.

23         THE COURT:  I think that's what they're

24 saying.

25         MR. PETE:  Yeah.

1          THE COURT:  Number 8, page 2 of document 27

2   was, status of the judgment e.g. due and owing,

3   satisfied, et cetera, defendant reported to a third

4   party.  So it was what was on the report when your

5   client pushed it out.

6          MR. PETE:  That information can be culled

7   and obtained because it does exist within their data

8   centers as I understand it.  Again, it is the man hour

9   and time of individuals for information that I'm not

10  sure there's any real purpose.

11         THE COURT:  There's a huge purpose.  If your

12  client -- they're claiming that your client knew that

13  Lexus/Nexus produced bad or unreliable information, and

14  part of that is because people either had their

15  judgments vacated, something -- I don't know, some

16  other state court proceeding happened so there was some

17  other kind of resolution, or they paid, right?

18         If you pushed out the information ad it was

19  correct at the time you pushed it out, no harm, no

20  foul, nothing happened.  Even if Lexus didn't update

21  it, they had whatever it was that was correct.

22  Obviously, the notion of updates suggests there was a

23  change.  So if your client had the right information at

24  the moment it was pushed out, then how is that -- that

25  person is not a member of this class.

1        MR. PETE:  Are we talking about just --

2   here, are we just referring to the status of the

3   judgment issue?

4        THE COURT:  I'm not sure how far we can go

5   with this given that you're completely missing

6   information about what your client's effort would be to

7   produce information and how viable it its.  Are you in

8   the position of -- what is it, Experian in this

9   Delarosa case.  At the end of the day, you really want

10  to do a data dump.  What do you care?  You just hit a

11  button, it pushes it all out.  Is that true for a one-

12  or two-year period but then after that, you have to re-

13  upload the information or recreate it?  I don't know

14  how your client's records are.  The problem is, I'm not

15  getting it from you that you know how your client's

16  records are.

17       MR. PETE:  We're not in a position where

18  they can just do a simple data dump as Experian can.

19       THE COURT:  All right.  If I understand --

20  these are my concerns, plaintiff, with what you're

21  asking for.  You want a long period of time.  There's

22  not even a test run here as to what's a viable period,

23  partially because we don't have that information.  It

24  doesn't seem like you had the conversation via

25  defendant's counsel with the client about what's

1    involved.

2              And you want more information.  It's unclear

3    again how this -- two things, one on your side, whether

4    it's necessary, and on the other side, whether it's

5    practical for defendant to push it out.  Then you are

6    saying you should be able to go back for a far time

7    period, the important difference being that that would

8    involve vendors other than Lexus/Nexus, which is what

9    your complaint is about.  You try to say, there's a

10   general practice of not being careful about the source

11   of information for judgment-related -- updated judgment

12   information, but that's not what this plaintiff --

13   she's somebody who apparently, and this is what your

14   complaint talks about, had to deal with the Lexus/Nexus

15   problem, possible problem.

16             So on the plaintiff's side, why should you

17   be allowed to have a longer period of time given what

18   your complaint says about what they were on notice

19   about, where they picked up the allegedly problematic

20   information, which is from Lexus/Nexus, and your

21   putative class representative only had the Lexus/Nexus

22   problem.  And we have no idea how hard this is going to

23   be, which is really not your burden but suggests that

24   there should be a much more detailed conversation

25   between counsel about what's practical, how much it's

1  going to cost, who should bear the costs, et cetera.

2          MR. SOUMALIS:  Yes, your Honor.  The short

3  answer to your Honor's question is, we seek to

4  represent the broadest New York class that we could

5  represent.  However, if we were to get the data for

6  that one year, July, 2017 to August, 2018, from Lexus

7  only, which shows which civil judgments are reported by

8  this company as owing, we could simply compare that

9  data to data we've already acquired from the New York

10  Office of Administrative Courts for that one year and

11  get a very quick sense, is the error rate 1% or 30%?

12  Is the class in the thousands or the tens of thousands.

13  Is this an issue where we should come back so I can

14  give you a fuller explanation as to why I think a five-

15  year statute of limitations applies, like we pled, like

16  they have not moved on but other courts have found

17  applicable.  But let's set that aside.

18          There are three objections, your Honor --

19          THE COURT:  But are you -- okay, go ahead.

20          MR. SOUMALIS:  In the document that they

21  filed, we filed jointly, docket 27 --

22          THE COURT:  Right.

23          MR. SOUMALIS:  -- are number one, privacy,

24  number two, the five-year statute of limitations,

25  number three, this idea that other vendors shouldn't be

1   included.  Let's take the five-year statute of

2   limitations aside.  That leaves us with a two-year

3   statute of limitations.  No question that would apply.

4          Privacy is not at issue, your Honor.  Every

5   single one of these people has a publicly filed

6   judgment against them available in New York with their

7   name, their address, and so forth.  The reason why we

8   want that information is not to invade a privacy that

9   they already don't have.  It's to simply be able to

10  compare that we're looking at the correct judgment.

11  The client i.d. that they're giving us or the customer

12  i.d., I can't be certain it's the same person.  I want

13  to make sure that we have the correct data.

14          There's no privacy violation, your Honor.

15  On top of that, there's a protective order in this

16  case.  On top of the protective order, they've

17  requested and we've agreed to and your Honor signed a

18  specific order that there's a permissible purpose to

19  turn this information over.  So there's no privacy

20  issue, there's no five-year statute of limitations

21  issue.

22          And this idea of the vendors, your Honor,

23  I'll explain that as well because our claim is not that

24  Lexus/Nexus is the screw-up.  There's no doubt that

25  they are because the three national bureaus that used

1    to buy data from them stopped using them because their

2    data was so bad.  But the claim here under the FCRA is

3    that this company has the responsibility to assure

4    maximum possible accuracy regardless of who their

5    vendor is, where they get it.

6              THE COURT:  Who else is the vendor?  I don't

7    understand.  Your complaint goes on and on and on about

8    all the problems with Lexus/Nexus.

9              MR. SOUMALIS:  To be sure.

10             THE COURT:  And your client seems to have a

11   Lexus/Nexus problem, so who else or what else are we

12   talking about?

13             MR. SOUMALIS:  There might not be another

14   one.  I don't have an answer to that question, your

15   Honor.  I don't know why the cutoff is August, 2018.

16   As far as I know, they're still using them today.

17             THE COURT:  What's the answer there?

18             MR. PETE:  I believe I communicated to one

19   of counsel's colleagues that we were informed by the

20   client that they're not using Lexus as of that date.

21             THE COURT:  As of August, 2018.

22             MR. PETE:  Yes.

23             THE COURT:  Okay.  And you started using

24   them in 2017?

25             MR. PETE:  Yes.

1          THE COURT:  After the big three, as you all

2    like to call them?

3          MR. PETE:  Yes.

4          MR. SOUMALIS:  Let me just make a point,

5    your Honor, because it's important.  I think what we

6    were informed is that they started using a different

7    Lexus product, not that they stopped using the company

8    altogether.  But at any rate, I don't have discovery on

9    this.

10          THE COURT:  Does that matter, what is the

11   product?

12          MR. SOUMALIS:  It doesn't matter to me, your

13   Honor.

14          THE COURT:  What it is?

15          MR. SOUMALIS:  They said they have a new

16   filtering system that they claim was better.  However,

17   I can't tell that because we don't have any discovery

18   on that, and certainly I can't test as to whether it's

19   any better because we don't have any data for either

20   before or after.  But I think to cut to the chase, your

21   Honor, if we focus on that one year that they wish to

22   focus on and give us a full spreadsheet, not filtered

23   for disputes because disputes has nothing to do with

24   this, and it's not typical of Ms. Harvey since she

25   didn't dispute.

1          THE COURT:  It's not that it has nothing to

2   do with it.  That was the Delarosa issue, that that

3   filtering would help you get to a manageable forty-plus

4   and you could move on to your class certification.

5   It's not a substantive issue but it was a practical one

6   for helping you identify the alleged error here.  But

7   anyway --

8          MR. SOUMALIS:  So I think that would work

9   against Experian because they're a much bigger

10  business.  It will not work against this defendant.

11  Your Honor, they're not making a serious

12  proportionality argument.  The best that I've heard

13  today and at any point from this defendant is that it

14  will take a couple of weeks to give us a full

15  spreadsheet for the year.  Give it to us.  We already

16  have the data to compare it to and we'll be able to

17  come back here in a month and tell your Honor, this is

18  a significant problem, it's a tiny problem.

19          I don't know the answer to that and,

20  therefore, I can't make any reasonable judgment as to

21  proportionality and so forth without even basic data.

22  But I can assure you we have done over twenty of these

23  cases.  There is a very good basis to argue that

24  there's a five-year statute of limitations, that the

25  vendor doesn't matter because at the end of the day,

1    it's this company that must assure that their records

2    are accurate and up to date, and I don't think they're

3    doing that, regardless of whether it's one software,

4    the other software, the updated Lexus software.   I

5    don't think that matters but if we could focus on just

6    that one year and get the complete data for that one

7    year, I think we'll have the answer as to whether we're

8    looking at a significant problem with this defendant or

9    a minor one.

10           THE COURT:  So in the other cases that

11   you're alluding to, were there more than one

12   representative plaintiff who could cover the period and

13   maybe the vendors and the type of information that was

14   of concern, or is it this?

15           MR. SOUMALIS:  There was never more than one

16   -- I'm corrected.  Some of the cases in Virginia had

17   multiple plaintiffs.  Most did not, including the ones

18   in New York.  The issue, your Honor, is a practical

19   one.  Sometimes these defendants just give us

20   spreadsheets.  They're data companies.  They do a

21   search, they pump out a spreadsheet with all the

22   judgments that are unsatisfied.

23           Sometimes they want to give us the five-year

24   class because if they want to settle, they want the

25   entire problem to go away and to not be back here a

1  year from now, litigating the two- to five-year class

2  as opposed to the one- to two-year class.  But the

3  problem in this case is, we have gotten nothing, just

4  these thirteen disputes.  We don't even have the data

5  sufficient to compare to actual public records in New

6  York, and we just can't do our work that way, your

7  Honor.

8         THE COURT:  Okay, so the information that

9  you're asking for at the top of page 2 of the letter at

10  27, is that the information that one would pull from a

11  Lexus/Nexus judgment search?

12         MR. SOUMALIS:  Your Honor, all that

13  information is on the face of an Innovus report, a

14  CBCInnovis report.  The information all comes from

15  Lexus/Nexus during that period of time, but it's

16  typically there on these reports regardless of the

17  time.  All of the same data is also publicly available

18  in the New York Office of Administration and we could

19  just -- we already have a spreadsheet of it.  It's just

20  comparing it.  If our tech people could do it -- we're

21  a tiny firm -- I'm sure they could do it.  They're a

22  data company.

23         MR. PETE:  Your Honor, if I may, if it seems

24  we're now talking about just the one year as

25  potentially an initial compromise to move forward,

1   that's a conversation I'm happy to have with the client

2   to narrow this issue from where we came here today with

3   going back five years, to potentially coming to an

4   agreement to move forward with just a year.  That's a

5   conversation I think I'm happy to have.  I apologize if

6   perhaps we did not have the most robust meet and confer

7   as we should have, but that seems to be -- as counsel

8   suggested.  He suggested it as a potential initial

9   work-around and I'm happy to have that discussion with

10  my client to narrow the scope of this to the

11  allegations in the complaint.

12          THE COURT:  I'm not leaving this open here.

13  These are the issues that were identified in the June

14  10th order, which says, "counsel should be prepared to

15  discuss the issues raised in the joint status letter"

16  -- that's the one we've been talking about --

17  "including the appropriate statute of limitations,

18  putative classes, the proportionality and feasability

19  of the discovery sought by plaintiffs, and whether

20  defendants intend to move pursuant to FRCP 12(c)."

21          In order to move this forward, and this is

22  without making a decision as to whether additional

23  discovery would be allowed, although I do think there

24  are concerns about what this plaintiff putative class

25  representative could represent and whether additional

1  discovery related to her would be appropriate, because

2  defendant's counsel is representing that the

3  Lexus/Nexus information was used between July, 2017 and

4  August, 2018.

5          What I don't want to hear down the line is

6  that you're giving me some information that is

7  finessing some distinction between different

8  Lexus/Nexus products, where the second product is not

9  one that either completely has avoided the problem that

10 allegedly exists with the outdated judgment

11 information.  But taking your representation that this

12 Lexus/Nexus problem which has been identified in the

13 complaint, the defendant's should produce the

14 information from July, 2017 to August, 2018 about the

15 New York civil judgment information that you produced

16 to your client's clients.

17          Whatever the available information is, but

18 I'm going to take what plaintiff's counsel said, which

19 is that your reports include items 1 through -- they

20 said 1 through 10.  Is the dispute information in it or

21 is it 1 through 9?  10 seems like an in-house piece of

22 information.

23          MR. SOUMALIS:  Yes, that's correct.

24          MR. PETE:  (Ui) -- your Honor.

25          MR. SOUMALIS:  I didn't mean to talk over

1   you.  Dispute would be in-house.

2           MR. PETE:  We agree with that, your Honor.

3           THE COURT:  So 1 through 9.  If 10 is there,

4   then include that information.  You should produce it

5   in a usable form.  That's going to require some

6   conversation.  I don't know if we're talking about an

7   Excel spreadsheet, some other database that you all use

8   for these kinds of cases, some program that you can

9   share.  I don't know how this information looks.  I

10  don't want you to spend time going through some

11  production that then plaintiffs will find completely

12  useless or have to spend a fortune to put it into some

13  usable form, so you should talk about the technical

14  production with each other before you actually make the

15  production.

16          Just for the record, I'll say that there was

17  an under-persuasive argument provided by defendant as

18  to any proportionality burden.  It may be in data sets

19  going further back, you start to have additional

20  technical problems with the production, I don't know.

21  You're going to have to talk to your client and if this

22  issue is revisited, then you should come prepared with

23  that information if I have to be part of that

24  discussion.

25          What's the time line for this?  You have to

1    talk to your client, compare notes with your tech

2    people to make sure what you're getting is going to be

3    in a usable form, and make the production.

4              MR. PETE:  I would propose if I could speak

5    to my client and then relay a proposal to plaintiff's

6    counsel.  And if it's unacceptable to plaintiff's

7    counsel, we can have that discussion.  I think we can,

8    between the two of us, work out a time and manner for

9    the production ordered by your Honor.

10             MR. SOUMALIS:  That seems reasonable.

11             THE COURT:  By the end of the month, I'd

12   like a letter with an update as to what your schedule

13   is going to be.  Then what I'd like is your proposal at

14   the end of when the production is made and whatever

15   window you need to do your research comparison,

16   whatever it is you're going to do, a date by which we

17   can then come back and revisit or at least me get an

18   update from you all as to where you are, how things are

19   looking.  Obviously, we'll see what's going on if you

20   do engage in motion practice, and then figure out what

21   else to do with discovery.

22             In these cases, you get these data sets.  Is

23   there some discovery about best practices, lack of best

24   practices?  Is there a 30(b)(6) deposition?  Let me put

25   an asterisk next to that.  According to a very talented

1  intern, these cases settle, so that's where I'm going

2  with this.

3          MR. PETE:  Perhaps they could mediate it.

4          THE COURT:  We can send you to a mediator if

5  you'd like.  We have the Court's ADR program.  But in

6  general, if the discovery is going to proceed here,

7  what else would you need beyond your possible ask in

8  the future for additional data?

9          MR. SOUMALIS:  So the attempt to settle,

10  your Honor, once we get a scope of whether we're

11  looking at a big group, a small group, the type of

12  problem.  Certainly we will need some depositions after

13  the data comes in.  I can't tell for sure if it would

14  be a 30(b)(6) or a combination of 30(b)(6) and

15  30(b)(1).  But typically, what I've seen in these cases

16  is, the data comes in some type of an electronic usable

17  format.

18          Typically, there's a 30(b)(1) deposition to

19  make sure that the person who prepared that spreadsheet

20  or was responsible for it did the adequate search,

21  didn't leave out any relevant fields, et cetera.

22  That's an important component.  A 30(b)(6) is usually

23  one or two witnesses related to the procedures, what

24  they know about data gathering, delivery, updating,

25  various courts, et cetera.  Then these cases also tend

1  to revolve around, your Honor, whether a wilful

2  violation is possible because that's typically what

3  gets cases certified.  Therefore, there's some

4  discovery, usually depositions, on the extent of

5  knowledge of a potential problem Lexus or disputes or

6  government complaints, et cetera.

7          So if I had to summarize, that's what I see

8  beyond this production of information about possible

9  class members.  To be frank, your Honor, what drives it

10 is what the numbers look like.  If we find out that

11 there are only thirteen people who really have this

12 problem, then all of this is not going to take place.

13 If there's 130,000 people, I might have a more

14 comprehensive list when we come back to your Honor

15 about what else remains.

16          THE COURT:  Okay.  How big a company is CBC?

17          MR. PETE:  In terms of?

18          THE COURT:  I don't know, revenue,

19 employees.

20          MR. PETE:  I will say that I think --

21          THE COURT:  It's the other side of the

22 equation on a settlement.

23          MR. PETE:  It's a decent-sized company, I'll

24 put it that way.

25          THE COURT:  Okay.

1          MR. PETE:  It's not as big as your

2     Experians, Trans Unions, but it's by no means a mom-

3     and-pop operation.

4          THE COURT:  Okay.

5          MR. PETE:  I would say it's a medium-sized

6     company.

7          THE COURT:  Okay.  If you want the details,

8     you can order the transcript, but I think you know

9     where we are.  By the end of the month, what I want is

10    your proposed schedule for the discovery that's been

11    ordered, a window in which the plaintiff would review

12    the data that is produced and be able to make an

13    evaluation, and a date by which you'll give me an

14    update on where that leaves you in terms of what other

15    discovery would be needed and whether the dispute as to

16    the other years remains alive or not.  I think we

17    should have an outside date.  I don't know.  What does

18    it take for production in these other cases?

19          MR. SOUMALIS:  I'm assuming they would be

20    able to give us an Excel spreadsheet similar to the one

21    they gave us but with more data.  We'll probably need

22    thirty days to be able to compare that spreadsheet to

23    the data we have.  So I don't know, I guess it depends

24    on the first step.  If they need thirty or sixty days,

25    then that gets us into the fall.  If they need longer

1   than that, maybe we should talk about it.

2           MR. PETE:  CBC hasn't really been involved

3   in any of these types of cases so they don't really

4   have -- I don't have a kind of prior case experience to

5   work off of in terms of, this is how long.  This is a

6   little bit new for them, which is why I want to chat

7   with them so I can make an adequate representation to

8   counsel in terms of how long this would take.

9           THE COURT:  Okay.  I would say by the end of

10  October, you should give me a status letter.  If you're

11  in a position to give me one sooner than that, then you

12  should do that.  Are there other issues to discuss?

13          MR. SOUMALIS:  Not from the plaintiff, your

14  Honor, thank you.

15          MR. PETE:  No, your Honor.

16          THE COURT:  Thank you.

17                      *  *  *  *  *  *  *

18

19

20

21

22

23

24

25

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18        I certify that the foregoing is a correct
19   transcript from the electronic sound recording of the
20   proceedings in the above-entitled matter.
21
22
23
24
25   ELIZABETH BARRON                    July 11, 2019
```