IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PATRICIA MCINTYRE,** | : | **CIVIL ACTION** |
| *Plaintiff*, | : | |
| v. | : | |
| | : | |
| **REALPAGE, INC., d/b/a ON-SITE,** | : | |
| *Defendant.* | : | No. 18-cv-03934 |

## FINAL APPROVAL ORDER

**AND NOW**, this **24th** day of **March 2023**, following a hearing held on March 20, 2023, and upon consideration of Plaintiff and Class Representative's Motion for a Service Award to Plaintiff, for an Award of Attorneys' Fees, and for Reimbursement of Expenses to Class Counsel (ECF No. 153) and Plaintiff's Motion for Final Approval of Class Action Settlement (ECF No. 154), and the Court being fully advised that:

1.  On March 20, 2023, the Court held a Final Approval Hearing, at which time the parties were afforded the opportunity to be heard in support of or in opposition to the Settlement. The Court received one (1) objection regarding the Settlement from April Steele.

2.  Notice to the Class required by Rule 23(e) of the Federal Rules of Civil Procedure has been provided in accordance with the Court's Preliminary Approval Order. Such Notice has been given in an adequate and sufficient manner; constitutes the best notice practicable under the circumstances, including the dissemination of individual notice to all members who can be identified through reasonable effort; and satisfies Rule 23(e) and due process.[1]

---

[1] Notice was provided via postal and electronic mail and reached 11,721 Class Members (99.1% of the Class). ECF No. 154-2 (Declaration on behalf of Settlement Administrator). The Settlement Administrator also prepared a website on which it published important case information. *Id.* Upon review of these efforts, and the notice document itself (ECF No. 153-8, Ex. A), the Court is satisfied that the Class was provided with sufficient notice pursuant to Rule

3. The Defendant has timely filed notification of this Settlement with the appropriate officials pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715.

4. The terms of the Settlement Agreement[2] are incorporated fully into this Order by reference. The Court finds that the terms of the Settlement Agreement are fair, reasonable, and adequate in light of the complexity, expense and duration of litigation and the risks involved in establishing liability, establishing damages, and maintaining the class action through trial and appeal.

5. The Court has considered the factors enumerated in Rule 23(e)(2) and finds they counsel in favor of final approval.

6. The Court finds that the relief provided under the Settlement constitutes fair value given in exchange for the release of claims.

7. The parties and each Class Member have irrevocably submitted to the jurisdiction of this Court for any suit, action, proceeding, or dispute arising out of the Settlement Agreement.

8. The Court finds that it is in the best interests of the parties and the Class and consistent with principles of judicial economy that any dispute between any Class Member (including any dispute as to whether any person is a Class Member) and any Released Party which, in any way, relates to the applicability or scope of the Settlement Agreement or the Final Judgment and Order should be presented exclusively to this Court for resolution by this Court.

---

23(c)(2)(B). *See Serrano v. Sterling Testing Systems, Inc.*, 711 F. Supp. 2d 402, 413 (E.D. Pa. 2010) (Notice was sufficient when it "detailed the Class claims, the proposed settlement, and the Class members' right to object or be excluded from the settlement," and "was widely disseminated through individual notices and online publication.").

[2] The Settlement Agreement was originally filed at ECF No. 147-2. The parties submitted a corrected version of page 13 thereof on December 15, 2022. ECF No. 150.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.    This action is a class action against Defendant, RealPage, Inc., d/b/a On-Site, on behalf of a class of consumers that has been defined[3] as follows:

> For the period beginning two (2) years prior to the filing of the Class Action Complaint and continuing through February 28, 2022, all natural persons with an address in the United States and its Territories who were (a) the subject of a tenant screening report prepared by Defendant that (b) contained information about an eviction proceeding, but which (c) failed to state that the eviction proceeding had been withdrawn, dismissed, vacated, satisfied or otherwise resulted in a favorable disposition or had no judicial finding against the consumer who was the subject of a tenant screening report, as that eviction proceeding is reflected in court records publicly available at the time of Defendant's tenant screening report (the "Class").
>
> Excluded from the Class are counsel of record (and their respective law firms) for any of the Parties, employees of Defendants, and employee of the Federal judiciary.

2.    The Settlement Agreement submitted by the parties for the Class is finally approved pursuant to Rule 23(e) of the Federal Rules of Civil Procedure as fair, reasonable, and adequate and in the best interests of the Class.[4] The Settlement Agreement, including the monetary and

---

[3] The Settlement Class consists of the trial Class certified on August 25, 2020. The Court incorporates all prior findings with respect to class certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3). ECF No. 64. To summarize, the Settlement Class satisfies the Rule 23 requirements because: (1) the Settlement Class consists of 11,823 Members (numerosity); (2) the Settlement Class shares the common question challenging whether Defendant's procedures in reporting eviction data met the "maximum possible accuracy" standard under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1691e(b) (commonality); (3) the interests of the Class and Named Plaintiff are aligned on the same facts and legal theories (typicality); and (4) Class counsel has proven to be qualified, experienced, and equipped to represent Class interests and litigate this case (adequacy). *See* ECF No. 64. Additionally, certification is proper because the common questions of law and fact predominate over any individual issues and this class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Id.*

[4] The Court finds that the proposed Settlement Agreement is "fair, reasonable, and adequate" to protect the interests of Class Members as required by Rule 23(e). The Court applies "an initial presumption of fairness in reviewing a class settlement" where, as here, the negotiations occurred at arms-length, there was sufficient discovery, the proponents of the settlement are experienced in similar litigation, and only a small fraction of the Class has objected. *In re NFL Players'*

*Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016). Additionally, the Court is guided by the *Girsh* factors as follows. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

(1) The complexity, expense, and likely duration of litigation favors approving the Settlement. To begin, this case would likely proceed to summary judgment which would involve substantial briefing and, likely, oral argument. If the case were to proceed to a jury trial, substantial preparation would be required of both parties and, given the hard-fought litigation to this stage, the Court presumes that an appeal might follow. Avoidance of this "unnecessary expenditure of time and resources benefits all parties, and weighs in favor of approving the settlement." *Serrano*, 711 F. Supp. 2d at 415 (citing *In re General Motors Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995)).

(2) Only one Class Member sought timely exclusion from the Settlement and only one Class Member objected to the Settlement (described *infra*). Weighed against the thousands of Class Members who received notice of and did not take issue with the Settlement, the Class' response to the Settlement weighs in favor of its approval. *In re Cendant Corp. Litig.*, 264 F.3d 201, 234–35 (3d Cir. 2001) ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement.").

(3) This case has been litigated over the course of four years and has involved substantial discovery and briefing as to class certification and the merits. The Court is satisfied that the parties had an "adequate appreciation of the merits of the case before negotiating." *See In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 319 (3d Cir. 1998). This factor favors the Settlement.

(4) Plaintiff's case requires proving that Defendant's actions violated the FCRA and that such actions were knowing or reckless. Indeed, Defendant asserts several defenses which could gain traction with the jury. *See* ECF No. 149 at 17–20. Accordingly, the risk of establishing liability favors the Settlement. *See Serrano*, 711 F. Supp. 2d at 416 (finding that there is "always a risk" that a jury will disagree as to whether the FCRA's knowledge requirement has been met).

(5) The risk of proving damages also weighs in favor of the Settlement. Indeed, the FCRA's statutory damages begin at $100 and are capped at $1,000. 15 U.S.C. § 1681n(a)(1)(A). Here, the proposed Settlement provides for automatic cash payments of more than $300 to all Class Members without any action or litigation on their part. This sum is "reasonable and fair relative to the statutory penalty that might be obtainable." *Serrano*, 711 F. Supp. 2d at 416. Additionally, the Settlement provides injunctive relief which may not be otherwise available to private litigants. *See Washington v. CSC Credit Servs.*, 199 F.3d 263, 268 (5th Cir. 2000) (holding that the FCRA does not permit private litigants, as opposed to the government, to pursue injunctive relief); *see also Dicesari v. Asset Acceptance LLC*, No. 11-cv-6815, 2012 WL 4108944, at *6 (E.D. Pa. Sept. 18, 2012) (same); *Miller v. Sunoco, Inc.*, No. 07-cv-1456, 2008 WL 623806, at *3 (E.D. Pa. Mar. 4, 2008) (same). This factor favors the Settlement. *See Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 214 (E.D. Pa. 2011) ("The risk of no or lower damages award at trial" favors settlement).

(6) There is no reason to assume that this case would not proceed as a viable class action through trial. However, Defendant has vigorously opposed class certification and there is always some risk of full or partial decertification. Accordingly, the sixth *Girsh* factor is neutral.

(7) The seventh factor asks whether the Defendant could withstand greater judgment. This factor is most relevant when a settlement is "less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement." *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011). This does not appear to be an issue here, so this factor is neutral.

(8) The eighth and ninth factors test "two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *In re NFL Players' Concussion Injury Litig.*, 821 F.3d at 440 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004)). If the Class were successful in their action, the maximum award available would be $1,000. However, even if the Class were to prevail, there is no assurance that the jury would award the full $1,000 to each Member. Accordingly, a guaranteed award that is thirty-percent of the damages cap is reasonable when weighed against the risk of an unfavorable outcome at trial or on appeal, and is bolstered by the injunctive relief afforded by the Settlement. *See Serrano*, 711 F. Supp. 2d at 417 ("Just as important, if not more so, the settlement has resulted in [Defendant's] cessation of the allegedly unlawful practice" which "provides a societal benefit as well."). This factor favors the Settlement.

The Court is also guided by the permissive *Prudential* considerations. *In re Prudential*, 148 F.3d 283; *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013) (the *Prudential* factors are "permissive and non-exhaustive, 'illustrat[ing] . . . [the] additional inquiries that in many instances will be useful for a thorough going analysis of a settlement's terms'"). There is substantial overlap between the *Girsh* and *Prudential* factors and the Court will address only those which are particularly relevant here. First, Class Members were afforded the opportunity to opt out of the Settlement. Second, the Settlement Award will be automatically mailed to Class Members without any action on their part. Additionally, as set forth *infra*, the Court finds that the attorneys' fees contemplated in the Order are reasonable under both the percentage of recovery method and the lodestar method. *See In re Prudential*, 148 F.3d at 338–341 (applying the percentage of recovery method first and using the lodestar method as a cross-check).

Finally, the Court analyzes the *cy pres* provision of the Settlement. The Settlement Agreement provides that two attempts will be made to distribute the entirety of the Settlement Funds to the Class on a *pro rata* basis, other than those allocated to Class counsel and Named Plaintiff. ECF No. 147-2 at 23–24. The proceeds of any checks which are not cashed following the second distribution will become a *cy pres* award paid to the Tenant Union Representative Network. *Id.* at 24. Class counsel represented that this organization is not a referral source for any matter. *Id.* at 24–25. The Court is satisfied that this structure adequately ensures that the Class receives the primary benefit of any Settlement Funds and that the *cy pres* distribution will only be made where further individual distributions are infeasible. *In re Baby Prods.*, 708 F.3d at 173–75.

injunctive relief set forth therein, shall be deemed incorporated herein and shall be consummated in accordance with the terms and provisions thereof, except as amended or clarified by any subsequent order issued by this Court.

3. As further consideration supporting the Settlement, the Court will also enter and approve a Consent Injunctive Relief Order consistent with the injunctive relief agreed to in Section 4.2 of the Settlement Agreement.

4. As agreed by the parties in the Settlement Agreement, upon the Effective Date, the Released Parties shall be released and discharged in accordance with the Settlement Agreement.

5. As agreed by the parties in the Settlement Agreement, upon the Effective Date, each Class Member is enjoined and permanently barred from instituting, maintaining, or prosecuting, either directly or indirectly, any lawsuit that asserts Class Released Claims.

6. Upon consideration of Class counsel's application for fees and costs and other expenses, the Court awards $2,166,666.67 as reasonable attorneys' fees and reimbursement for reasonable out-of-pocket expenses, which shall be paid from the Settlement Fund.[5]

---

[5] The Third Circuit requires that the Court conduct a "thorough judicial review" of fee applications in class action settlements. *In re Prudential*, 148 F.3d at 333. Because this is a hybrid case which involves both a common fund and a fee-shifting statute, the Court conducts a percentage of recovery analysis first, followed by a lodestar cross-check. *See Kelly v. Business Info. Grp., Inc.*, No. 15-cv-6668, 2019 WL 414915, at *15 (E.D. Pa. Feb. 1, 2019); *see also Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 496 (3d Cir. 2017).

The Court considers ten factors under the percentage of recovery approach. *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009). The non-exhaustive factors include: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the Class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of Class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to

a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement. *See id.* The Court analyzes these factors to the extent relevant and not already discussed *supra*.

The Settlement created a common fund of $6,350,000, approximately two-thirds of which will be distributed to nearly 12,000 Class Members and one-third of which will be awarded to Class counsel for their representation and as reimbursement for fees and costs. ECF No. 147-2 at § 5.3. Only one Class Member objected to the award, but this objection was rooted in neither law nor relevant facts. Though the lone objection is sympathetic, it does not outweigh the necessity "to reward counsel for undertaking socially beneficial litigation in cases where the relief has . . . a small monetary value," such as FCRA cases. *See Kelly*, 2019 WL 414915, at *15.

Class counsel has significant experience litigating FRCA class actions and, unsurprisingly, has represented this Class with particular skill and efficiency for four years, including on appeal. ECF No. 153-2 (describing work performed and expertise in consumer litigation); *McIntyre v. Realpage, Inc.*, 20-8035, (3d Cir. Sept. 21, 2020), ECF No. 12 (Brief on behalf of the Class). Relatedly, Class counsel devoted over 3,000 hours to representing the Class and did so on a contingency fee basis at substantial risk of non-payment. ECF No. 153-2. Moreover, contingency fees representing 30% to 40% of recovery are "fairly typical." *Kelly*, 2019 WL 414915, at *19 (citing *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000)). As to similar cases, Counsel's requested award of $2,166,666.67 (33.33%) is "squarely within the range of awards found to be reasonable by the courts." *Rossini v. PNC Fin. Servs. Grp., Inc.*, No. 18-cv-1370, 2020 WL 3481458, at *19 (W.D. Pa. June 26, 2020); *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 653 (E.D. Pa. 2015) ("[F]ee awards generally range between nineteen and forty-five percent of the common fund."); *In re Ravisent Techs., Inc. Sec. Litig.*, No. 00-cv-1014, 2005 WL 906361, at *11 (E.D. Pa Apr. 18, 2005) (collecting cases where 30–35% of the common fund was awarded to class counsel).

Additionally, Counsel represents that the instant Settlement reflects "one of the largest recoveries against this Defendant," which is "more than twice the amount of the largest known government or agency settlement for similar conduct." ECF No. 153-1 at 14. Finally, the Settlement provides important injunctive relief which is not guaranteed at trial for even successful FCRA plaintiffs. Indeed, pursuant to the Settlement, Defendant will take meaningful steps towards ensuring the accuracy of eviction reports and mitigating harms that flow from inaccurate reporting. Accordingly, for the above referenced reasons, the Court finds that the award requested by counsel is reasonable under the percentage of recovery method.

The Court also conducts an "abridged" lodestar "cross-check." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305–06 (3d Cir. 2005). The lodestar calculation involves multiplying the number of hours reasonably worked on a matter by the attorneys' reasonable hourly billing rate. *Id.*

Whether the hourly rate is reasonable depends upon the experience and skill of the attorneys and the market rates in the relevant community. *See Reibstein*, 761 F. Supp. 2d at 259.

7. Upon consideration of the application for an individual settlement and service award, the Named Plaintiff, Patricia McIntyre, is awarded the sum of ten thousand dollars ($10,000), to be paid from the Settlement Fund, for the service she has performed for and on behalf of the Class.[6]

---

Here, the hourly rate ranges between $305 (paralegal) to $855 (partner). ECF No. 153-2 at 11. Upon review of counsel's overwhelming experience in consumer litigation and class actions (ECF No. 153-3) and standard billing rates in the relevant markets (ECF No. 153-4), the Court is satisfied that counsel's hourly rates are reasonable.

The reasonable hours analysis examines whether counsel spent excessive time on the matter and whether the division of labor was allocated amongst attorneys and staff commensurate with the skills and billing rates of each. *Reibstein*, 716 F. Supp. 2d at 259. Counsel summarized the work performed, the individual performing each task, the amount of time expended, and the hourly rates associated with each attorney and paralegal. ECF No. 153-2. Importantly, any duplicative or redundant time entries were removed from counsels' submission. *Id.* at 1–2. The Court has reviewed each and finds that the hours billed were reasonable in light of the duration and nature of this litigation.

Here, the lodestar amount for all counsel is $1,714,070.00 in attorney and paralegal time, and over $60,000 in reasonable and unreimbursed costs, for an approximate total of $1,774,070. The crosscheck is performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier. *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006). Here, the lodestar multiplier is 1.23 based on attorneys' fees alone, and 1.19 when costs are included. This is a reasonable request and in line with awards approved of in this Circuit. *See In re Prudential*, 148 F.3d at 341 (multipliers ranging from 1 to 4 are "frequently awarded"); *Pfeifer v. Wawa, Inc.*, No. 16-cv-0497, 2018 WL 4203880, at *14 (E.D. Pa. Aug. 31, 2018) (2.7 was "well within the range of reasonableness"); *Flores v. Express Services Inc.*, No. 14-cv-3298, 2017 WL 1177098, at *3 (E.D. Pa. Mar. 29, 2017) (4.6 multiplier was reasonable); *Barel v. Bank of Am.*, 255 F.R.D. 393, 403–04 (E.D. Pa. 2009) (approving 1.35 multiplier); *Meijer, Inc. v. 3M*, No. 04-cv-5871, 2006 WL 2382718, at *24 (E.D. Pa. Aug. 14, 2006) (approving of 4.77 multiplier). It is particularly reasonable because of the risk associated with contingent representations. *See In re Rite Aid Corp.*, 396 F. 3d at 306–07 ("The multiplier is a device that attempts to account for the contingent nature" of the case, among other risks).

[6] In FCRA cases, courts frequently approve service awards of approximately $10,000 or more. *See Sapp v. Experian Info. Sols., Inc.*, No. 10-cv-4312, 2013 WL 2130956, at *3 (E.D. Pa. May 15, 2013) ($15,000); *Deaton v. Trans Union LLC*, No. 20-cv-01380 (E.D. Pa.), ECF No. 36 ($9,500); *Giddiens v. Lexis Nexis Risk Solutions, Inc.*, No. 12-cv-2624 (E.D. Pa.), ECF No. 55 ($10,000); *Robinson v. General Info. Servs., Inc.*, No. 11-cv-7782 (E.D. Pa.), ECF No. 55 ($10,000). The Court considers the risk to the plaintiff in commencing the suit (financially and

8. The Court overrules the objection of April Steele to the Settlement. After carefully consideration, the Court concludes that the objection does not create questions as to whether the terms of the Settlement Agreement are fair, reasonable, and adequate.[7]

---

otherwise), the notoriety or personal difficulties encountered by the plaintiff, the extent of plaintiff's personal involvement (discovery responsibilities, depositions, trial testimony), the duration of the litigation, and the plaintiff's personal benefit (or lack thereof) purely in their capacity as a member of the Class. *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 118 (E.D. Pa. 2005).

Though the record does not suggest that Named Plaintiff encountered significant risk or personal difficulties in representing the Class, the other factors weigh in favor of a $10,000 award. Named Plaintiff participated in this litigation for approximately four years which involved, conferring with counsel on the preparation of the Complaint, responding to discovery requests, and preparing for and appearing at her deposition. *See* ECF No. 153-1 at 10. Named Plaintiff also collaborated with counsel as to the terms of the Settlement Agreement which serves to benefit nearly 12,000 Class Members. *Id.* Additionally, Named Plaintiff would otherwise receive $300 as a member of the Class which would hardly account for the significant undertaking of serving as Class Representative. Upon review of Named Plaintiff's valuable participation in this action and similar awards granted in this District, the Court finds that a $10,000 service award is reasonable.

[7] The Court received *pro se* objections from Ms. Steele. Exhibits 2–3. Ms. Steele also appeared before this Court and presented her arguments. While the Court recognizes the housing-related hardships Ms. Steele has experienced, the Court does not find that Ms. Steele's grievances are related to this case or have any bearing on the proposed Settlement Agreement. Indeed, Ms. Steele appears to raise arguments directed at other entities that are not party to this case. *See* Exhibit 2 ("all 3 credit Bureaus").

To the extent that Ms. Steele objects to the awards provided to Class counsel and Named Plaintiff, the Court notes Ms. Steele's dissatisfaction while also reiterating that the maximum award available to Class Members, if they were to pursue any claims independently and through to trial, would be $1,000. By virtue of this class action, all Class Members receive $300 without any action on their part. Though Ms. Steele may have preferred to serve as Named Plaintiff, which here involved four years of participation in ongoing litigation, this preference is not an adequate reason to deny authorization of a hard-fought settlement.

As to Ms. Steele's assertion that "nothing is changing or being fixed," the injunctive relief negotiated by the Settlement requires that Defendant takes significant steps to fix the underlying issues. Additionally, Class counsel confirmed that any of Defendant's records related to Ms. Steele are presently accurate. ECF No. 154-1 at 16. While the Court is sympathetic to Ms. Steele's position, the Court must overrule her objection.

9.      Neither this Final Judgment and Order, nor the Settlement Agreement, shall be construed or used as an admission or concession by or against the Defendant or any of the Released Parties of any fault, omission, liability, or wrongdoing, or the validity of any of the Class Released Claims.  This Final Judgment and Order is not a finding of the validity or invalidity of any claims in this lawsuit or a determination of any wrongdoing by the Defendant or any of the Released Parties.  The final approval of the Settlement Agreement does not constitute any opinion, position, or determination of this Court, one way or the other, as to the merits of the claims and defenses of Plaintiff, the Class Members, or the Defendant.

10.     Without affecting the finality of this judgment, the Court hereby reserves and retains jurisdiction over this settlement, including the administration and consummation of the settlement.  In addition, without affecting the finality of this judgment, the Court retains exclusive jurisdiction over Defendant and each member of the Class for any suit, action, proceeding or dispute arising out of or relating to this Order, the Settlement Agreement or the applicability of the Settlement Agreement.  Without limiting the generality of the foregoing, any dispute concerning the Settlement Agreement, including, but not limited to, any suit, action, arbitration or other proceeding by a Class Member in which the provisions of the Settlement Agreement are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, shall constitute a suit, action or proceeding arising out of or relating to this Order.  Solely for purposes of such suit, action or proceeding, to the fullest extent possible under applicable law, the parties hereto and all Class Members are hereby deemed to have irrevocably waived and agreed not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of this Court, or that this Court is, in any way, an improper venue or an inconvenient forum.

11. This action is hereby dismissed on the merits, in its entirety, with prejudice and without costs.

12. The Court finds, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, that there is no just reason for delay, and directs the Clerk to enter final judgment.

13. The persons listed on **Exhibit 1** hereto have validly excluded[8] themselves from the Class in accordance with the provisions of the Settlement Agreement and Preliminary Approval Order and are thus excluded from the terms of this Order.  Further, because the settlement is being reached as a compromise to resolve this litigation, including before a final determination of the merits of any issue in this case, none of the individuals reflected on Exhibit 1 may invoke the doctrines of *res judicata*, collateral estoppel, or any state law equivalents to those doctrines in connection with any further litigation against Defendant in connection with the claims settled by the Class.

14. For the reasons set forth above, Plaintiffs' Motions (ECF Nos. 153, 154) are **GRANTED**.

BY THE COURT:

/s/ Chad F. Kenney
_____
**CHAD F. KENNEY, JUDGE**

---

[8] Class counsel represented that two individuals sought untimely exclusion from the Settlement. The Court deems such individuals to be included in the Settlement Class pursuant to the terms and deadlines of the Settlement Agreement and the clear deadlines provided in the Settlement Notice. *See* ECF No. 153-8.

# EXHIBIT 1



02/27/2023

**McIntyre v. RealPage, Inc. - Exclusion List**
**1 Class Member**

| ID# | First Name | Last Name |
|---|---|---|
| 1880 | Antoinette | Cherry |

# EXHIBIT 2

I object to the settlement. Being a victim feels like a slap in the face and only the attorneys and McIntyre are being paid and I have complained to all 3 credit bureaus and FCRA about false information on evictions and other things that was untrue and not updated. It affected my credit, my life and still is on my credit reports. Letters of satisfaction are not good enough and now only the lawyers are being paid over 2 million. I do not agree. Its my life that has been affected and turned upside down and I don't even get an apology. They didn't even fix the problem or come up with a solution, why is only 1 victim getting paid more than others. Its not adding up and I would like to retain my own lawyer. Im in Richmond Virginia. My name is April M. Steele, ▇▇▇▇
▇▇▇▇▇▇▇▇▇ Richmond VA. 23234
▇▇▇▇▇▇▇. I object to the entire class and these Attorney's being paid out and off instead of the actual victims who's credit was affected and still is

and fails to show dismissed or satisfied resulting cases in a favorable disposition. I'm looking for legal counsel on my behalf and would like to attend court To ask why are the lawyers being paid and nothing is changing or being fixed, no apology, but they are representing us. If they are going to award 6 million in damages it should be paid to the victims they claim they are fighting for. split evenly, my credit was also breached. Thank You

April Steele

I have also tried to contact the lawyers that are representing us. I left several messages and noone even cared enough to return my call, but they are fighting for us.

I will try to be at court

# EXHIBIT 3

**From:** April Steele
**Sent:** Sunday, March 19, 2023 2:43:21 AM
**To:** Chambers of Judge Chad F Kenney
**Subject:** McIntyre v.. real page, inc

<mark>CAUTION - EXTERNAL:</mark>

Hey this is April Steele and I will be in court Monday to object to the lawyers receive that amount for something that I went through they told me I owed $758 gave me four letters of satisfaction didn't tell me if I ain't paid $300 and something that I couldn't get in a place the four letters are satisfaction equal up past 758 my rent went from 50 to 758 in the projects they had a lawsuit where they were embezzing the money I had to pay everyone back with Richmond riha they were taking utility payments and put it on people's bill when they were supposed to be giving them utility checks and I was evicted for no reason and it started for that money and they're still saying that I am leased and I have proof of all of it. I tried to fix all of this in 2017 no one would listen to me I was unable to move into the roughest projects here and I don't understand why these lawyers fighting for me who didn't even know my name getting paid $2 million dollars for something that I went through and they're not even trying to resolve or make a solution for and still leave me out back all because of some paperwork they found or some paperwork they put together for their time when I almost went bankrupt trying to put paperwork together and I'm still leased and I don't know anything about that lease I don't want it went through the stuff along with several other people and I just feel it should be split it amongst the people equally or at least I deserve for my half to be fixed with at least and award of 3.5 million. Can't take back the time me and my kids slept outside or in the shelter on the ground and they're going to get paid for it and I can't move on with my life rent a place this place I got now I'm lucky because it was word of mouth from a friend at the shelter that we were in I don't understand and I can't get back for that time or all those years humiliated or like they were being racist or discriminating no one will listen to me but when these lawyers want to step up and say something they get paid $2 million and don't fix the problem they call me back and asked me not to come to court said we can file my own case I'm not trying to walk away from this case without having my rights back and having a chance to have credit like everyone else or at least be compensated for the issue cuz I got paperwork I'm still leased I was charged and I went through it right along with my kids and I'm still going through it but not for them to get paid and walk away, thank you for your time and understanding. [REDACTED] April Steele